IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE H. NORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 14-CV-05930 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| ALLIANCEONE RECEIVABLES MANAGEMENT, INC., | ) ) ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant AllianceOne Receivables Management, Inc. ("AllianceOne"), by counsel, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, respectfully submits this Reply in Support of its Motion for Summary Judgment.

**INTRODUCTION**

In the face of all the evidence that AllianceOne manually dialed the calls in question without the use of an "automatic telephone dialing system" ("ATDS"), and after being allowed to take any discovery he needed to try to support his claim, serial-plaintiff Wayne Norman ("Plaintiff") makes three arguments to try to stave off summary judgment. Specifically, as the sole support for his claim that AllianceOne violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*., by making calls to Plaintiff's cell phone using an ATDS—a claim he has made only "on information and belief"—Plaintiff argues that: (1) AllianceOne admits it uses a predictive dialer to make *other* calls; (2) Plaintiff supposedly heard "pauses" and "clicks" on his cell phone during five calls, and

those "pauses" and "clicks" indicate that an ATDS was used; and (3) AllianceOne has been sued in other cases involving alleged violations of the TCPA, some of which have settled.

As explained below, Plaintiff's arguments do not present any genuine issue of material fact or any basis for denying AllianceOne's Motion for Summary Judgment. Accordingly, summary judgment should be entered in its favor.

## ARGUMENT

I. **THE UNCONTROVERTED EVIDENCE SHOWS THAT ALLIANCEONE DID NOT VIOLATE THE TCPA BECAUSE IT MANUALLY DIALED THE CALLS AT ISSUE AND PLACED THE CALLS USING EQUIPMENT LACKING AUTOMATED OR PREDICTIVE DIALING CAPACITY AND WITHOUT USING AN ARTIFICIAL OR PRERECORDED VOICE.**

In order to prevail on his claim, Plaintiff must prove by a preponderance of the evidence that the seven calls he received from AllianceOne were made using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227(a)(1), 227(b)(1). As explained in AllianceOne's Motion, however, Plaintiff's claim fails for the (separate) reasons that (1) AllianceOne manually dialed all of the calls in question, and (2) the equipment used in placing those calls did not have automated or predictive dialing capacity and, in fact, required telephone numbers to be dialed by hand.

Specifically, the uncontroverted evidence—in the form of AllianceOne's sworn answers to Plaintiff's First and Second Interrogatories, responses to Plaintiff's Requests for Admission, the call logs for the calls in question, and AllianceOne's affidavit—demonstrates that, in general, AllianceOne places collection calls using one of two systems: either its manual dialing system, known as Ontario Systems' Manual Contact System ("Manual Contact System"), or its automated dialing system. (Def.'s LR 56.1 Stmt. ¶¶ 14-18.) Those systems are entirely separate from each other. (Def.'s LR 56.1 Stmt. ¶ 5.)

2

Indeed, the Manual Contact System is a dedicated, self-contained system designed specifically for manually dialing cell phone numbers. (Def.'s LR 56.1 Stmt. ¶ 10.) As such, the Manual Contact System lacks any capacity to randomly or sequentially generate and dial cell phone numbers, to dial from a database of numbers, or to dial predictively, and it does not utilize or involve an artificial or prerecorded voice. (Def.'s LR 56.1 Stmt. ¶¶ 14-18.) Rather, to place calls, AllianceOne representatives are required to manually type the 10-digit phone number and then wait for an answer to the call. (Def.'s LR 56.1 Stmt. ¶ 9.) And after completion of the call, the representative must then manually type the next 10-digit phone number appearing on the manual-only dialing list and wait for an answer to the call, and so on. (Def.'s LR 56.1 Stmt. ¶ 9.)

Critically, it is uncontroverted that each of the seven calls AllianceOne placed to Plaintiff's telephone number was manually dialed using the Manual Contact System. (Def.'s LR 56.1 Stmt. ¶¶ 14-18.) Thus, for each of those calls—as with all calls placed using that System—AllianceOne's representatives logged into the Manual Contact System, were provided Plaintiff's phone number from a manual-only dialing list, and dialed the phone number by hand by typing the 10-digit number. Consequently, there is no genuine dispute that AllianceOne manually dialed all of the calls in question, that none of the calls were made using an artificial or prerecorded voice, and that the equipment used in placing those calls did not have automated or predictive dialing capacity. And as a result, AllianceOne did not violate the TCPA. *See, e.g.*, *Boyd v. General Revenue Corp.*, No. 11-cv-1243, 2013 WL 866944, at *12 (M.D. Tenn. Mar. 7, 2013) (granting TCPA defendant's motion for summary judgment where its records reflected that "all calls to [plaintiff's] cellular telephone number were dialed manually" and were thus "lawful under the TCPA"); *Dennis v. Regional*

3

*Adjustment Bureau, Inc.*, No. 09-cv-61494, 2010 WL 3359369, at *3 (S.D. Fla. Jul. 7, 2010) (finding that TCPA defendant's calls to plaintiff "were not made using an [ATDS] or pre-recorded or artificial voice" and thus entering summary judgment in defendant's favor where its uncontroverted records reflected that "each of its calls to [plaintiff] were manually dialed"); *Jackson v. Cavalry Portfolio Servs., LLC*, No. 13-cv-00617, 2014 WL 517490, at *2 (E.D. Mo. Feb. 7, 2014) (awarding summary judgment to TCPA defendant where affidavits established "the calls made by defendant to plaintiff's cellular telephone were dialed without the use of an automatic dialing system"); *Mudgett v. Navy Fed. Credit Union,* No. 11-c-0039, 2012 WL 870758, at *2 (E.D. Wis. Mar. 13, 2012) (granting TCPA defendant's motion for summary judgment where the record, which consisted of sworn affidavits, reflected that defendant manually placed calls at issue and plaintiff provided no evidence that calls were placed from telephones that were connected to computers capable of auto-dialing).

In his Response, Plaintiff attempts to chip away at the evidence against him by challenging the sufficiency of AllianceOne's supporting affidavit. According to Plaintiff, the Declaration of John Tutewohl ("Tutewohl Affidavit") is supposedly deficient because "Mr. Tutewohl **is not** one of the representatives that dialed Plaintiff's cellular phone number." (Resp. at 4, emphasis in original.) Plaintiff's argument, however, categorically ignores the admissibility of business records.

"Under the business records exception to the hearsay rule, the custodian of records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices; likewise, to be an 'other qualified witness,' it is not necessary that the person laying the foundation for the

4

introduction of the business record have personal knowledge of their preparation." *United States v. Jenkins*, 345 F. 3d 928, 935 (6th Cir. 2003); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 899-900 (E.D. Mich. 2012) (court could consider screen prints of non-party's account as evidence of defendant's intent in TCPA claim). At the same time, courts have found that call logs generally qualify as admissible business records as they have the necessary indicia of trustworthiness to be admitted under Fed. R. 803(6). *See, e.g.*, *Roth v. Godiva Chocolatier, Inc.*, No. 06-C-3564, 2008 WL 95600, at *7 (N.D. Ill. Jan 7, 2008); *Fair Isaac Corp. v. Experian Solutions Inc.*, No. Civ 06-4112, 2009 WL 3526491, at *1 (D. Minn. Oct. 23, 2009); *In re Memorex Telex Corp.*, 242 B.R. 826, 831 (D. Del. 1999); *Muller-Paisner v. TIAA*, 881 F. Supp. 2d 579, 591 (S.D.N.Y. 2012).

Here, Mr. Tutewohl attests to his familiarity and knowledge concerning AllianceOne's business operations, telephone systems, and record keeping systems. (Second Declaration of John Tutewohl ("Second Tutewohl Dec."), ¶¶ 2-3, 5, 7-8.) He further attests to AllianceOne's business records, which, as he explains, are kept in the ordinary course of AllianceOne's regularly conducted business activity, and that AllianceOne's employees and representatives with knowledge of the events recorded made the records or transmitted the information to be included in the records at or near the time of the recorded events. (Second Tutewohl Dec. ¶¶ 2-6.) And based on Mr. Tutewohl's review of these business records, he attests that each call AllianceOne made to Plaintiff was dialed manually using AllianceOne's manual-only dialing system. (Second Tutewohl Dec. ¶¶ 9-13.) Contrary to Plaintiff's contention, Mr. Tutewohl's testimony sufficiently establishes the facts in question, and there is no need, much less any "requirement," that AllianceOne produce affidavits or testimony from every representative that dialed Plaintiff's cell phone

number—in fact, the fundamental purpose of the business records exception is to obviate the need for that kind of evidence.

Thus, for all these reasons, AllianceOne is entitled to summary judgment.

## II. PLAINTIFF'S ARGUMENTS IN HIS RESPONSE DO NOT RAISE ANY GENUINE ISSUES OF MATERIAL FACT OR REASON PRECLUDING SUMMARY JUDGMENT.

In his Response, Plaintiff makes three arguments to support his position that AllianceOne is not entitled to summary judgment and that, at trial, he would prevail on his claim (which he asserts only "on information and belief"). First, Plaintiff points out that AllianceOne uses a predictive dialer to make *other* calls. (Resp. at 7.) Second, Plaintiff claims that he supposedly heard "pauses" and "clicks" on his cell phone during five calls, and that those "pauses" and "clicks" must mean that an ATDS was used. (Resp. at 9.) And third, Plaintiff points out that AllianceOne has been sued in other cases involving alleged violations of the TCPA, and that some of those cases have settled. (Resp. at 9-10.) None of this "evidence," however, would allow any reasonable jury to return a verdict in Plaintiff's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990); *Barnhart v. Mack Trucks, Inc.*, 157 F.R.D. 427 (N.D. Ill. 1994). And because Plaintiff is required—but has failed—to produce sufficient evidence to support his claim, AllianceOne is entitled to summary judgment. *See, e.g.*, *Anderson*, 477 U.S. at 248.

### A. AllianceOne's uses of an automated dialer to make unrelated calls is irrelevant and does not create any genuine issues of material fact.

As his first argument, Plaintiff asserts that "[AllianceOne] *openly* advertises having '*company-wide predictive dialer stations*' on its webpage to contact debtors," that "[AllianceOne] '*admitted*' to using such dialer system to contact debtors," and that

6

AllianceOne "has also registered to use, *and has been* using an Automatic Dialer Announcing Device (ADAD) to contact debtors." (Resp. at 7, emphasis in original.) But Plaintiff does not, and cannot, present any evidence that AllianceOne used its automated dialing system to make any call to Plaintiff—because it never did. Indeed, the uncontroverted evidence shows that although AllianceOne uses its automated dialing system to make *certain* calls, none of the calls to Plaintiff was made using that system. Instead, every call that AllianceOne placed to Plaintiff was manually dialed through the separate, self-contained Manual Contact System. Thus, Plaintiff's first argument lends no support for his claim and certainly does not preclude the entry of summary judgment for AllianceOne.

    **B.    Plaintiff's claim that he heard "pauses" or "clicks" during the subject calls is not credible and is irrelevant in any event.**

Next, Plaintiff claims that he supposedly heard "pauses" and "clicks" on his cell phone during five calls, and that those "pauses" and "clicks" are "indicative of using an autodialer, or predictive dialer to initiate the calls." (Resp. at 9, emphasis in original.) However, Plaintiff's claim is not credible when viewed against the evidence; and even if it were, it certainly does not mean that an ATDS was used to make the calls.

It is undisputed that AllianceOne made a total of seven calls to Plaintiff, and those calls appear in the call log attached to Mr. Tutewohl's Affidavit. (Second Tutewohl Dec., Ex. 1.) Plaintiff claims that he heard "pauses" and "clicks" during five calls; however, one came from a "blocked number," so there is no way to establish—and Plaintiff has not produced

7

anything to suggest—that that call came from AllianceOne.[1] The remaining four calls identified by Plaintiff each line up precisely, by date and time, to calls appearing on AllianceOne's call log—i.e., (1) October 21, 2013, at approximately 6:10 p.m., (2) October 24, 2013 at approximately 3:38 p.m., (3) October 30, 2013, at approximately 12:37 p.m., and (4) October 30, 2013, at approximately 4:27 p.m. (Second Tutewohl Dec. Ex. 1.)[2] And the undisputed evidence shows that each of those calls, along with the others, were manually dialed using the Manual Contact System. (Def.'s LR 56.1 Stmt. ¶¶ 14-18.)

Moreover, six of the seven calls at issue were recorded, and AllianceOne has submitted those recordings into evidence. (Def.'s LR 56.1 Stmt. Add'l. Facts ¶ 2.) It is apparent from those recordings that at least five of the seven calls at issue connected directly to a pre-recorded answering message, and a sixth call went unanswered without establishing any connection between the AllianceOne caller and a live person. (Def.'s LR 56.1 Stmt. Add'l. Facts ¶¶ 3.) It is also clear from those recordings that none of the calls include an audible "click" or discernable "pause." (Def.'s LR 56.1 Stmt. Add'l. Facts ¶ 4.) Thus, the recordings completely contradict Plaintiff's uncorroborated statements that he answered these calls, heard clicking, and detected pauses—unless, of course, he "answered" the calls after AllianceOne hung up, and the "click" was the disconnection of the call and the "pause of dead air" was the result of the termination of the call. In either event, Plaintiff's averment concerning "clicks" and "pauses" during five of the calls to his cell

---

[1] Notably, this call, which Plaintiff claims took place on October 23, 2013, does not appear on AllianceOne's call log, while at the same time, each of the other calls identified by Plaintiff in his affidavit appear on the call log.

[2] This call log was inadvertently omitted as an exhibit to the first Declaration of John Tutewohl; however, it had been previously filed and included as an exhibit to AllianceOne's proposed Motion for Leave to File its Motion for Summary Judgment. (See Dkt. # 20-2.)

phone does not raise any genuine issue of material fact precluding summary judgment for AllianceOne.

But even if Plaintiff had answered each call, and even if he had heard a "pause" or a "click," it certainly would not mean, *a fortiori*, that the call was placed using an ATDS. For his claim, Plaintiff relies exclusively on an FCC "Guide" concerning "Unwanted Telephone Marketing Calls" which contains the statement: "The use of autodialers, including predictive dialers, often results in abandoned calls – hang-ups or 'dead air.'" But, clearly, there are numerous—and more likely—reasons why Plaintiff or any other cell phone user may hear a "pause" or "dead air" or "clicking" or any other interference during a cell phone call. Plaintiff's unsubstantiated connection of "pauses" and "clicks" to the use of an ATDS is nothing but speculation; and that speculation cannot preclude summary judgment. *See Yeatman v. Inland Property Management, Inc.*, 845 F. Supp. 625, 629 (N.D. Ill. 1994).

**C.      AllianceOne's involvement in other TCPA cases is irrelevant.**

As his final argument to try to support his claim, Plaintiff points out that AllianceOne has been involved in other cases alleging violations of the TCPA, and that some of those cases have settled. (Resp. at 9-10.) But it goes without saying that the fact AllianceOne has been a party to other lawsuits alleging violations of the TCPA, and that some of those lawsuits were resolved by settlement, has absolutely no bearing on Plaintiff's claim in this case. In fact, it is not probative—or even admissible—evidence of whether AllianceOne violated the TCPA *in this case*. And it certainly does not do anything to controvert the overwhelming evidence *in this case* that AllianceOne dialed each call by hand using its Manual Contact System, and thus did not violate the TCPA.

9

## **CONCLUSION**

For the reasons set forth above and in its Motion for Summary Judgment, Defendant AllianceOne Receivables Management, Inc. respectfully requests that the Court grant its Motion for Summary Judgment, enter judgment in favor of AllianceOne and against Plaintiff, and award AllianceOne any further relief the Court deems just and appropriate.

                Respectfully submitted,

                ALLIANCEONE RECEIVABLES MANAGEMENT, INC.

                By: /s/ Scott G. Weber
                    One of its attorneys

Jeffrey D. Pilgrim
Scott G. Weber
Pilgrim Christakis LLP
321 N. Clark St., 26th Floor
Chicago, Illinois 60654
Ph. (312) 939-0923
Fax (312) 939-0983

**CERTIFICATE OF SERVICE**

       Scott G. Weber, an attorney, certifies that on March 2, 2015, he electronically filed the foregoing **Defendant's Reply in Support of its Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system and served a copy via First Class Mail, proper postage prepaid, on the individual listed below by depositing it in the U.S. mail at 321 N. Clark St., Chicago, Illinois 60654:

Wayne H. Norman
509 Elgin, Apt. 1
Forest Park, IL 60130

                                                /s/ Scott G. Weber