UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE NORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 05930 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ALLIANCEONE RECEIVABLES MANAGEMENT, INC., | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**ORDER**

In October 2013, Wayne Norman received unsolicited telephone calls to his cellular phone, aimed at collecting a debt that he did not owe. The calls originated from AllianceOne Receivables Management, Inc., which Norman has sued under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, a law that bans the use of automatic-dialing technology to call cell phones without prior permission.[1] AllianceOne now moves for summary judgment because Norman cannot show, even with all reasonable inferences in his favor, that it in fact used automatic-dialing, as opposed to manual dialing, to make the calls to Norman. As explained below, the motion is granted.

**I. Background**

The facts viewed in the light most favorable to Norman as the non-moving party. In October 2013, AllianceOne called Norman's cell phone at least seven times

---

[1]The Court exercises federal-question jurisdiction under 28 U.S.C. § 1331. *See also Mims v. Arrow Finan. Servs., LLC*, 132 S.Ct. 740, 743 (2012) (holding that federal question jurisdiction extends to TCPA claims).

without his consent. PSOF ¶ 3.[2] Alliance One is a corporation primarily engaged in debt collections. DSOF ¶ 2. It was attempting to collect a debt by calling Norman, but he did not owe it any money. PSOF ¶¶ 4, 5. This much is not disputed; the only contested issue is *how* AllianceOne placed those calls. As one of its debt collection methods, AllianceOne advertises to its potential creditor-clients its use of "company-wide predictive dialer stations." *Id.* ¶ 7. Norman asserts that these predictive-dialer stations constitute forbidden automatic-dialing technology under the TCPA, *id.* ¶ 9, and that they were used to make the calls to his cell phone, R. 34, Pl.'s Resp. Br. at 4. AllianceOne counters that each of its calls made to Norman's number was dialed by hand by an operator using the company's "manual contact system," DSOF ¶ 14, which is distinct from its automated-dialing system, *id.* ¶ 5.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550

---

[2]Citation to the docket is "R." followed by the entry number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for AllianceOne's Statement of Facts) [R. 32]; "PSOF" (for Norman's Statement of Facts) [R. 35 at 13-16]; "Pl.'s Resp. DSOF" (for Norman's Response to AllianceOne's Statement of Facts) [R. 35 at 1-13]; and "Def.'s Resp. PSOF" (for AllianceOne's Response to Norman's Statement of Additional Facts) [R. 41]. Where a fact is admitted, only the asserting party's statement of facts is cited; where an assertion is otherwise challenged, it is so noted.

U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(A). An "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). AllianceOne asserts that it did not employ such a device to call Norman and, despite his belief in the contrary, Norman has not demonstrated a genuine issue of material fact that it did.

AllianceOne maintains that though it does have an automated dialing system, including "predictive dialer stations," it uses automated calling only to reach certain debtors. Def.'s Resp. PSOF ¶ 8. It adds that it identifies cell phone numbers to ensure that they are placed on manual-only dialing lists. DSOF ¶ 8. Cell phones are called only by an AllianceOne representative who manually types the number and waits for an answer to the call. *Id.* ¶ 9. This manual contact system does not employ an artificial or prerecorded voice. *Id.* ¶ 12. Norman was only contacted in this hand-dialed fashion, says AllianceOne. *Id.* ¶ 15. In support of these contentions, AllianceOne submits two affidavits from John Tutewohl, the company's Vice President of Business Analytics, along with logs that AllianceOne maintained of its calls to Norman's number and recordings of some of those calls. R. 32-3, First Tutewohl Decl.; R. 41-1, Sec. Tutewohl Decl.; R. 41-1, Call Record.[3]

Norman challenges Tutewohl's sworn statement on the grounds that because he was not one of the representatives who actually called Norman's phone, Tutewohl does not have personal knowledge about whether automated dialing was in fact used. Pl.'s Resp. Br. at 4-5. Yet Tutewohl relies not only on his own experience with the calls in question, but on company records that support his and AllianceOne's position. AllianceOne submitted (belatedly, along with a supplemental affidavit from Tutewohl) a copy of its records outlining the calls made to Norman's number; this log indicates that the calls in question were dialed manually (as indicated by the code "MAN" appearing next to each instance). *See*

---

[3]Copies of the recordings of the calls were produced in discovery to Norman and were delivered to the Court.

4

Call Record. Tutewohl authenticated this log as a record prepared and maintained as part of AllianceOne's regular business practice, based on his knowledge of these types of documents from his role overseeing operations. Sec. Tutewohl Decl. ¶¶ 3-5.

It is well-accepted that, under Fed. R. Evid. 803(6), "[t]he custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (rejecting argument that movant for summary judgment needed to produce testimony from specific person who created record) (citing *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)). And, absent evidence of tampering or falsification, a call log "has the necessary indicia of trustworthiness to be admitted[.]" *Roth v. Godiva Chocolatier, Inc.*, 2008 WL 95600, at *7 (N.D. Ill. Jan. 7, 2008); *see also Muller-Paisner v. TIAA*, 881 F. Supp. 2d 579, 592 (S.D.N.Y. 2012) (call sheets "easily meet the business records exception" to the hearsay rule), vacated on other grounds, 528 F. App'x 37 (2d Cir. 2013).

Norman offers no evidence whatsoever to question the call record's validity as an admissible corporate record or Tutewohl's familiarity with it. Of course, Norman was free (indeed, he was obliged) to use the tools of discovery, including depositions of Tutewohl or other personnel more closely involved with the actual call-making, to produce evidence that might sow such doubt. *See Bluestein v. Cent. Wisconsin Anesthesiology, S.C.*, 769 F.3d 944, 948 n.1 (7th Cir. 2014) ("Federal Rule of Civil Procedure 56 requires that a party genuinely disputing a fact must support that

5

assertion by citing to particular parts of the record."). He did not, and is left with little more than his inadequate protestations that Tutewohl and the company records should not be trusted. *See Majors v. General Elec. Co.*, 714 F.3d 527, 540 (7th Cir. 2013) (conclusory statements unsupported by the record are insufficient to defeat summary judgment).

Norman also challenges the recordings of six of AllianceOne's calls to his cell phone, claiming that they have not been authenticated by clear and convincing evidence that they actually record a conversation between the parties. R. 42, Pl.'s Sur-Reply Br. at 3-4. According to AllianceOne, the recordings demonstrate that none of the calls to Norman's number were actually answered, and instead either went to a voicemail recording or went unanswered, refuting Norman's claims that he heard "clicks" and dead air—purportedly indicative of an automated dialer at work—during the calls. *See* Sec. Tutewohl Decl. ¶ 14; R. 40, Def.'s Reply Br. at 8-9. Ultimately, whether the recordings are authentic or not is irrelevant. As explained, AllianceOne has produced call records, unrefuted, that show that the calls to Norman's phone were dialed manually; Norman's attack on the recordings' validity as well would not, even if it had merit, help him create a genuine issue of fact surrounding the call log.

By contrast, Norman's affirmative case for a trial on his claims boils down to the following. First, AllianceOne advertises the use of a predictive dialer on its website. Pl.'s Resp. Br. at 7. But it should be self-evident that AllianceOne's acknowledged use of this tool to contact *some* debtors does not constitute proof that

6

it was used to call *Norman*. Second, Norman heard "clicks" and dead air when he answered AllianceOne's calls, a sign that an autodialer was at work. *Id.* at 9. Norman points to a "guide" on the Federal Communications Commission's website on unwanted telephone marketing calls that explains that the "use of autodialers, including predictive dialers, often results in abandoned calls—hang-ups or 'dead air.'" R. 35-6, FCC Guide. But Norman has not established that the agency's website "guide" fits within a hearsay exception so that it would be admissible evidence. There is no surrounding foundation to understand how the guide was generated and what information or data it relies on: how "often" is often for dead air; do manually dialed calls also generate dead air; and what do "clicks" (what Norman says he heard, and is accepted as true for purposes of the motion) mean? Without some foundation for admissibility, the evidence is insufficient for a reasonable jury to find that AllianceOne's call logs—which state that the calls were manually dialed—are somehow inaccurate. Finally, Norman points out that AllianceOne has been sued in a number of other cases by different plaintiffs for alleged violations of the TCPA. Pl.'s Resp. Br. at 9-10. But the mere existence of these suits is neither here nor there as far as the merits of Norman's claims are concerned.

In sum, in face of AllianceOne's record evidence that the calls to Norman were manually dialed, Norman offers nothing to create a triable issue about that point. Because there is no basis for a reasonable jury to find that AllianceOne used an automated dialer to unlawfully contact him, Norman's claim fails.

## IV. Conclusion

For the reasons stated above, AllianceOne's motion for summary judgment is granted.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2015